# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLE ANDERSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br><br>GANNETT CO., INC.,<br><br>Defendant. | CASE NO. 3:22-cv-05088<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nichole Anderson ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to the allegations regarding Plaintiff and on information and belief as to the other allegations.

## INTRODUCTION

1. Plaintiff brings this action on behalf of herself and a class of similarly situated individuals against Defendant Gannett Co., Inc. ("Defendant" or "Gannett") arising from Defendant's fraudulent and unconscionable autorenewal billing practices against consumers after they have already cancelled their newspaper subscriptions.

2. Plaintiff purchased a Courier News digital subscription from Defendant for $1.00 for the first 6 months and for $9.99/month upon renewal.

3. At all relevant times, Defendant's representations and contractual terms expressly promised that Plaintiff may cancel her automatic renewal subscription at any point up until her subscription was set to automatically renew.

1

4. Despite duly canceling her subscription before it was set to automatically renew, Defendant continued to charge Plaintiff a $9.99 subscription fee after she had cancelled her subscription.

5. Defendant's conduct breaches its contract with consumers, violates New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq.* ("NJCFA"), and the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA").

6. As a result of Defendant's fraudulent conduct, Plaintiff paid nearly $10.00 in additional, unauthorized charges for a monthly subscription that she had already cancelled.

7. Plaintiff and the Classes have been injured by Defendant's deceptive and unlawful practices. Accordingly, Plaintiff brings this action on behalf of herself and the putative Classes seeking actual damages, statutory damages, punitive damages, restitution, and an injunction to prevent Defendant from continuing to engage in its illegal billing practices described herein.

**PARTIES**

8. Plaintiff is a citizen and resident of Franklin Park, New Jersey and purchased a Courier News subscription from Defendant on or about November 18, 2021.

9. Defendant Gannett Co., Inc. is a Delaware corporation with its principal place of business located at 7950 Jones Branch Drive, McLean, Virginia 22107. Defendant is a mass media holding company and one of the largest newspaper publishers in the United States. Defendant owns the USA Today, as well as hundreds of local newspapers throughout the nation including Courier News, which is a daily local newspaper that services areas throughout central New Jersey.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, ("CAFA"), under 28 U.S.C. § 1332(d)(2) because the matter in controversy,

exclusive of interests and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant regularly and systematically conducts business in New Jersey through the publication and circulation of several newspapers throughout the State of New Jersey.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A. Gannett's Newspaper Subscription Services Are Offered to Consumers on an Auto-Renewal Basis and Explicitly Permit Consumers to Cancel Their Subscriptions At Any Time Prior to the Renewal**

13. Defendant touts itself as "a subscription-led and digitally focused media and marketing solutions company" with "unmatched reach at the national and local level," that "touches the lives of millions with…Pulitzer-Prize winning content, consumer experiences, and advertiser products and services."[1]

14. Gannett's portfolio includes the USA Today and hundreds of local media outlets in 46 states across the nation,[2] including Courier News based in Bridgewater, New Jersey.

15. Gannett offers various paper and digital newspaper subscription services to consumers, including monthly subscriptions for Unlimited Digital Access, Sunday Print Delivery including Unlimited Digital Access, and Sunday-Friday Print Delivery including Unlimited

---

[1] Gannett, About Us, available at https://www.gannett.com/who-we-are/ (last accessed August 9, 2022).
[2] Gannett, Brands, available at https://www.gannett.com/brands/ (last accessed August 9, 2022).

3

Digital Access[3]. Each plan is marketed at different billing rates per month with varying levels of benefits, such as providing access to USA TODAY e-editions and crossword puzzles.

16. Upon information and belief, Gannett's newspaper subscription service offerings are substantially similar in kind across all states and contain substantially similar subscription terms and conditions.

17. For example, to initiate a subscription with Courier News, when a consumer chooses their desired subscription plan and clicks "Subscribe Now," Defendant directs consumers to a webpage wherein they are prompted to enter their delivery and payment information to complete their order.

18. At the very bottom of the personal information and payment information screen is a checkbox located above the "SUBSCRIBE" button that informs consumers that their subscription will automatically renew until the consumer decides to cancel:

> *I acknowledge by clicking "Subscribe", I have read the subscription terms and conditions below and I am agreeing to a subscription that will automatically renew. My credit card will be charged until I cancel the subscription, which I may do at any time by calling Customer Service, visiting the Chat Center, or if a CA, ME, NY and VT states resident going online.

19. Underneath the "SUBSCRIBE" button, Defendant again promises that consumers are free to cancel their subscriptions at will:

> Your subscription will continue and we will charge you at the then regular rate, less any applicable credits, unless you cancel, ***which you can do at any time*** . . .

20. Consistent with these representations, Defendant's Subscription Terms & Conditions for Courier News also explicitly promise that consumers may effectively cancel their subscriptions without any limitations and at any point before the auto-renewal period refreshes:

---

[3] My Central Jersey, View Offers, available at https://cm.mycentraljersey.com/cn-specialoffer (last accessed August 3, 2022).

**Full Access, digital only subscriptions:**

- **Cancellation:** If at any time you decide to cancel your subscription, ***which you can do at any time***, you may contact customer service. You must cancel your subscription before it automatically renews for a subsequent period to avoid being charged for the next period's subscription fee. If you timely cancel your subscription, the cancellation will become effective at the end of the then current subscription period.

**Exhibit A at p. 4 (emphasis added).**

21. Taken together, these provisions indicate that Plaintiff and other consumers may stop their subscriptions from automatically renewing and cancel their subscriptions so long as they contact Defendant *at least one day* before the day they are due to be charged.

**B. Plaintiff Was Wrongfully Charged Subscription Fees After She Cancelled Her Courier News Subscription**

22. On or about November 18, 2021, Plaintiff purchased a Courier News subscription from Defendant, Account Number 672971350. The Subscription was advertised as a Digital Only subscription that would include 24/7 access to mycentraljersey.com and access to the e-Edition Monday through Sunday.

23. Plaintiff's Subscription was advertised as a monthly subscription for $1.00 for the first 6 months and then $9.99/month (plus any applicable sales tax) upon renewal.

24. On or about May 14, 2022, Plaintiff first informed Defendant via Defendant's online chat service that she wished to discontinue her Subscription.

25. Defendant spent several minutes trying to convince Plaintiff to keep her Subscription, but Plaintiff refused and confirmed her intent to cancel the Subscription due to financial reasons.

26. Defendant finally confirmed that they would cancel her Subscription.

27. Approximately one month later, however, Defendant automatically renewed Plaintiff's previously cancelled Subscription and billed Plaintiff's account for $9.99.

28. Plaintiff thereafter contacted Defendant once again via online chat to cancel her previously cancelled Subscription.

29. A similar conversation ensued before Defendant finally confirmed that they would cancel her Subscription. Plaintiff received an email confirmation confirming the same.

30. Thus, as a result of Defendant's fraudulent conduct, Plaintiff paid nearly $10.00 in unauthorized charges from Defendant, despite duly cancelling her Courier News Subscription on May 14, 2022.

**C.  Defendant's Conduct Breaches its Contract with Consumers**

31. Defendant's conduct as described herein breaches its contract with consumers.

32. Defendant's failure to cancel subscriptions upon consumers' instruction to cancel the subscriptions breaches its contract with consumers.

33. Defendant's contract terms explicitly promise that consumers are free to cancel their subscriptions "at any time" upon contacting Defendant before the subscription period is set to automatically renew.

34. Defendant routinely fails to honor consumers' requests to stop their newspaper subscriptions from automatically renewing and instead, continues to charge them subscription fees without their authorization in breach of the express terms of its contract.

**D.  Numerous Consumer Complaints Against Defendant's Subscription Services Confirm Plaintiff's Experience Is Not Unique**

35. The following online complaints against Gannett regarding its various newspaper subscriptions offered throughout the United States indicate that Plaintiff's experience is far from unusual:

Approximately 2 ½ months ago I cancelled my subscription to the Asbury Park Press (after 30+ years as a customer) The customer service rep indicated that my service would be terminated and a refund would be issued. The monthly billing continued and the newspaper continued to be delivered spottily. Daily service has been discontinued A second call to ************* brought assurances of compliance to my request. The billing continued and I informed **** to discontinue payment. Today I received a **** bill for 80+ dollars from Gannett…

I cancelled a subscription with Gannett in January 2022 with the cancellation confirmation number of *******. I continued to be charged twice in January for $26, three days in a row in February for $26 each totaling $78, and once in March for $26…Gannett needs to stop charging my debit card, and this issue needs to be resolved immediately.

…this is a scam as [Gannett] keep[s] charging you while you try to cancel account or remove payment source…

I canceled over the phone, and they keep billing me every month. When I try to call, I keep getting redirected.

…I began an online subscription to The Naples Daily News (NDN, owned by the Gannett Company) …I cancelled this subscription via telephone prior to the six month anniversary date…Despite my telephone cancellation, my credit card was charged $14.99….

….Company does not make it easy to cancel unwanted service.

We cancelled our subscription to Evansville Courier Press more than five weeks ago. After waiting and numerous phone calls, we still have no refund. They are eager to charge my credit card when renewing but can't seem to find the information for a refund.

Gannett Newspapers – the Providence Journal – offered an introductory digital subscription for six months at $1.06 that I subscribed to while traveling in Rhode Island this summer. I've now attempted to cancel the subscription before it renews but I am not able to find a way to cancel it…. It seems as this is an ongoing attempt by Gannett to prevent subscribers from cancelling AND (more likely) to inflate their subscription numbers to inflate the prices they charge advertisers.

Cancelled trial subscription in May. Renewal was scheduled for August. Oshkosh Northwestern still charged my debit card $9.99 after multiple emails and recorded calls stating my account was cancelled….[Gannett] charged my card on file after cancellation and I am entitled to my $9.99 they should have never taken from me after cancelling three months prior to the end of my trial.

The \*\*\* \*\*\*\*\* newspaper did 7 unauthorized transaction to my debit card ,,after I cancel back in March 2021 totally $61.00 and they refuse to give me a refund..

I canceled my subscription with the Lansing State Journal a company owned by Gannett, over the phone, however I continued to be billed after canceling my subscription.

Due to poor quality and delivery issues, my husband called and canceled our newspaper subscription at the beginning of June. Since this time we continue to get charged for the paper….

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class and Subclass of individuals defined as:

**The Class:**

All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, cancelled their Gannett-owned newspaper subscription but were subsequently charged by Defendant.

**The Courier News Subclass**:

All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, cancelled their Courier News subscription but were subsequently charged by Defendant.

37.    Excluded from the Classes are all persons who received refunds from Defendant after being charged any additional amounts after they cancelled their subscription; Defendant, its parents, subsidiaries, affiliates, officers, and directors; this Court and any of its employees assigned to work on the case; and all employees of the law firms representing Plaintiff and Class members.

38.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

39. Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can establish each of the elements of her claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40. ***Numerosity – Fed. R. Civ. P. 23(a)(1):*** The members of the Classes are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of individuals.

41. ***Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and 23(b)(3):*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. The questions of law and fact common to both Plaintiff and Class members include, but are not limited to, the following:

   a) Whether Defendant engaged in unconscionable, fraudulent, and/or deceptive business practices under the laws asserted;

   b) Whether Defendant's alleged conduct constitutes violations of the laws asserted;

   c) Whether Defendant breached its contract with consumers;

   d) Whether Plaintiff and members of the Classes were harmed by Defendant's actions;

   e) Whether Defendant was unjustly enriched;

   f) Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages;

   g) Whether an injunction is necessary is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

42. ***Typicality – Fed. R. Civ. P. 23(a)(3):*** Plaintiff's claims are typical of all members of the Classes. The evidence and legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and the Class members are substantially the same because all of the relevant agreements between Defendant and its subscribers were identical as to all relevant terms,

and also because the challenged practice of charging consumers after they cancel their subscriptions are uniform for Plaintiff and Class members. Accordingly, in pursuing her own self-interest in litigating her claims, Plaintiff will also serve the interests of the Classes.

43. ***Adequacy of Representation – Fed. R. Civ. P. 23(a)(4):*** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and Class members that would make class certification inappropriate. Additionally, Plaintiff's Counsel are competent to advance the interest of the Classes having been designated as Lead Counsel in dozens of similar class action cases. Plaintiff and her Counsel intend to prosecute this action vigorously.

44. ***Superiority – Fed. R. Civ. P. 23(b)(2):*** A class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its

maintenance as a class action. As a result, a class action is superior to other available methods for fair and efficient adjudication of this action. Absent a class action, Plaintiff and Class members will continue to suffer monetary harm, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

**COUNT I**
**Violation of New Jersey's Consumer Fraud Act ("NJCFA")**
**N.J.S.A. §§ 56:8-1 *et seq.***
**(On Behalf of the Courier News Subclass)**

45. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

46. This count is brought pursuant to the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1 *et seq.*

47. The NJCFA protects consumers from any "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…" N.J.S.A. § 56:8-2.

48. Defendant's Courier News subscription service constitutes "merchandise" within the definition of the NJCFA. § 56:8-1(c).

49. As described herein, Defendant violated the NJCFA by knowingly and fraudulently renewing Plaintiff and Class members' Courier News subscription without their authorization and after the cancellation date.

50. Defendant's automatic renewal of Plaintiff and Class members' Courier News subscription without their authorization and after the cancellation date constitutes an unconscionable commercial practice under the NJCFA.

51. As a direct and proximate result of Defendant's deceptive and unconscionable acts and practices, Plaintiff and the Class were harmed and suffered ascertainable loss in that they were

charged for the Courier News subscription after they informed Defendant that they wish to cancel their subscription. Accordingly, they have suffered and will continue to suffer actual damages.

52. Plaintiff and the Class are entitled to relief including, but not limited to, actual damages, injunctive relief, and attorneys' fees and costs.

## COUNT II
## Violation of the Electronic Fund Transfer Act ("EFTA")
## 15 U.S.C. § 1693
## (On Behalf of the Class and the Courier News Subclass)

53. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

54. The Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, provides procedural requirements for electronic money transfers that are designed to protect consumers from transactions made in error or without the consumers' consent.

55. Plaintiff and all Class members are "consumers" within the meaning of 15 U.S.C. § 1693a(6).

56. Plaintiff and each Class member maintained an "account" within the meaning of 15 U.S.C. § 1693a(2).

57. Plaintiff and all Class members entered into a contract with Defendant for a newspaper subscription. The contract provides that newspaper subscriptions will automatically renew each month. The foregoing qualifies as a "preauthorized electronic fund transfer" as that term is defined in the EFTA, 15 U.S.C. § 1693a(10), as the electronic fund transfer was authorized in advance to recur at substantially regular intervals.

58. Defendant violated 15 U.S.C. § 1693e(a) when it failed to obtain the proper authorization from the Plaintiff and the Class, in writing, upon the automatic renewal of their subscriptions after Plaintiff and the Class had already cancelled said subscriptions. As described

12

in Defendant's contract, Defendant did not have the authority to charge the accounts of Plaintiff and the Class members after they cancelled their subscriptions.

59. Defendant initiated and secured electronic fund transfers from Plaintiff's and the Class members' accounts as set forth above without actual authority to initiate those transfers after cancellation.

60. Plaintiff and the Class members have suffered damages as a result of Defendant's violations of the EFTA.

61. Pursuant to 15 U.S.C. § 1693m, Plaintiff and the Class members seek actual damages, statutory damages, and reasonable costs and attorney's fees.

## COUNT III
## Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing
## (On Behalf of the Class and the Courier News Subclass)

62. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

63. Plaintiff and Defendant contracted for newspaper subscription services as embodied in Defendant's subscription terms.

64. No contract provision authorizes Defendant to charge consumers after they cancel their newspaper subscriptions.

65. In fact, Defendant's contract expressly promises that Plaintiff and consumers are free to cancel their automatic renewal subscriptions "at any time."

66. Defendant routinely fails to honor consumers' requests to stop their subscriptions from automatically renewing and instead, continues to charge them subscription fees without their authorization.

67. Therefore, Defendant breached the terms of its contract.

68. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

69. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance.

70. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

71. Defendant has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.

72. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

73. Plaintiff and members of the Class have sustained damages as a result of Defendant's breaches of the contract.

**COUNT IV**
**Unjust Enrichment**

**(On Behalf of the Class and the Courier News Subclass)**

74. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

75. This Count is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

76. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of the wrongful conduct alleged herein.

77. Plaintiff and the Classes conferred a benefit on Defendant.

78. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

79. Defendant's unjust enrichment is traceable to and resulted directly and proximately from, the conduct alleged herein.

80. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained monies received by Defendant as a result of its inequitable conduct as more fully stated herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of the proposed Classes, by and through her attorneys, prays for the relief as follows:

A. Certifying the proposed Classes;

B. Declaring Defendant's billing practices and policies to be in violation of the laws asserted;

C. Awarding compensatory, statutory, and punitive damages in an amount according to proof;

D. For an order requiring Defendant to disgorge and make restitution of all monies it wrongfully acquired by means of the unlawful practices set forth above;

E. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with the action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

G.      Awarding any such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury of all issues in this Class Action Complaint that are so triable.

Dated: August 17, 2022            Respectfully submitted,

*/s/ Rachel Edelsberg*
**Rachel Edelsberg**
Jersey Bar No. 039272011
**DAPEER LAW, P.A.**
3331 Sunset Avenue
Ocean, New Jersey 07712
Telephone: 305-610-5223
E-Mail: rachel@dapeer.com

**KALIEL GOLD PLLC**
Sophia G. Gold*
Jeffrey D. Kaliel*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
sgold@kalielgold.com
jkaliel@kalielpllc.com
**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Putative Classes*