**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICHOLE ANDERSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GANNETT CO., INC.,<br><br>Defendant. | Civil Action No. 22-05088 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

  **THIS MATTER** comes before the Court upon Defendant Gannett Co., Inc.'s Motion to Dismiss and to Strike the Class Action Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), 12(b)(6), and 12(f). (ECF No. 12.) Plaintiff Nichole Anderson opposed (*see* ECF No. 21), and Defendant replied (*see* ECF No. 23). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, the present motion shall be **STAYED** pending limited discovery and additional briefing on Defendant's factual attack as to whether Plaintiff has an injury-in-fact sufficient for Article III standing. As detailed in the Order that follows, the parties shall be given sixty (60) days in which to conduct said discovery and additional time to submit their jurisdictional briefing to the Court prior to a decision on the Rule 12(b)(1) grounds for dismissal.

I.     BACKGROUND

    A. Factual Background[1]

Plaintiff Nichole Anderson ("Plaintiff" or "Anderson") is a resident of Franklin Park, New Jersey. (ECF No. 1 ¶ 8.) Anderson alleges that, on November 18, 2021, she purchased a Courier News subscription from Defendant Gannett Co., Inc. ("Defendant" or "Gannett"), which was priced at $1.00 for the first six months and, upon automatic renewal, $9.99 (plus any applicable sales tax) per month. (*Id.* ¶¶ 2, 8, 23.) The subscription was "digital only" and provided 24/7 access to the local news website mycentraljersey.com. (*Id.* ¶ 22.)

Gannett is a subscription-led and digitally focused media and marketing solutions company whose portfolio includes USA Today and hundreds of local media outlets in 46 states, including the Courier News based in Bridgewater, New Jersey. (*Id.* ¶¶ 13-14.) When Anderson purchased her subscription to the Courier News in 2021, Gannett's contractual terms promised Anderson and customers like her that they could cancel their subscription "at any time," at no added cost, up to the date when the subscription was set to automatically renew at the higher price. (*Id.* ¶¶ 3, 18-20, 33.)

On or about May 14, 2022, Anderson used Gannett's online chat service to notify Gannett that she wished to end her subscription to the Courier News. (*Id.* ¶ 24.) Gannett tried to persuade Anderson to keep the subscription, but when Anderson insisted on canceling, Gannett confirmed that the subscription would be canceled. (*Id.* ¶¶ 25-26.) Despite Anderson's attempt at canceling her subscription to the Courier News before it was set to automatically renew, Gannett charged

---

[1]     When reviewing a motion to dismiss pursuant to either Rule 12(b)(1) or 12(b)(6), a court typically accepts as true all well-pleaded facts in the complaint. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)); *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

2

Anderson the higher $9.99 per month subscription fee approximately one month later. (*Id.* ¶¶ 4, 27.) As a result, Anderson paid nearly $10.00 for a monthly subscription to the Courier News even after she had attempted to cancel. (*Id.* ¶¶ 6, 30.)

When Anderson became aware of the charge, she once again used Gannett's online chat service to try to cancel her subscription. (*Id.* ¶ 28.) Gannett confirmed that Anderson's subscription would be canceled, and she subsequently received email confirmation that the subscription had been canceled. (*Id.* ¶ 29.)

There are purportedly several online reviews (though Anderson does not plead either the online location of the reviews or who allegedly posted them or when they were posted) that complain of the same problem as that faced by Anderson, *i.e.*, individuals attempting to cancel subscriptions at Gannett publications and continuing to be charged notwithstanding their attempt(s) to cancel. (*Id.* ¶ 35.)

B. Procedural Background

On August 17, 2022, Anderson filed a putative class action Complaint, which alleges that Gannett "routinely fails to honor consumers' requests to stop their newspaper subscriptions from automatically renewing and[,] instead, continues to charge them subscription fees without their authorization in breach of the express terms of its contract." (ECF No. 1 ¶ 34.)

Pursuant to Rule 23, Anderson seeks to represent a class consisting of "[a]ll consumers who . . . cancelled their Gannett-owned newspaper subscription but were subsequently charged," and a subclass consisting of "[a]ll consumers who . . . cancelled their Courier News subscription but were subsequently charged."[2] (*Id.* ¶ 36.) Those excluded from the proposed class include "persons who received refunds . . . after being charged any additional amounts after they cancelled

---

[2] The proposed classes are temporally limited to "within the applicable statute of limitations preceding the filing of th[e] action to the date of class certification." (*Id.* ¶ 36.)

their subscription." (*Id.* ¶ 37.) Anderson alleges that the classes are "likely to include thousands of individuals." (*Id.* ¶ 40.)

Anderson brings a claim against Gannett on behalf of the subclass for violations of New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* (Count I). (*Id.* ¶¶ 45-52.) She also brings claims on behalf of both the class and subclass for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.* (Count II); breach of contract, including breach of the covenant of good faith and fair dealing (Count III); and unjust enrichment (Count IV). (*Id.* ¶¶ 53-80.)

On October 18, 2022, Gannett moved to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6), and to strike the class allegations pursuant to Rule 12(f). (ECF No. 12.) After an extension of time, Anderson opposed on December 5, 2022. (ECF No. 21.) Gannett replied on January 9, 2023. (ECF No. 23.)

### C. The Parties' Arguments

In moving to dismiss the Complaint, Gannett contends that Anderson wants to improperly "turn the alleged human error of one employee into a class action litigation." (ECF No. 12-1 at 7.[3]) Gannett submits that there are several grounds to dismiss and/or strike the claims against it pursuant to Rules 12(b)(1), 12(b)(6) and 12(f). The preliminary Rule 12(b)(1) ground advanced by Gannett is that Anderson never actually paid the disputed subscription fee, and as a result, has no injury-in-fact sufficient for Article III standing. (*Id.* at 12.) To substantiate this allegation, Gannett submits an October 17, 2022 declaration from Blair Yoke ("Yoke"), Gannett's Executive Escalations Manager, who is "responsible for overseeing the customer service escalations process." (ECF No. 12-2 ¶ 2.) Yoke declares under penalty of perjury that Gannett has no record

---

[3]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

of Anderson contacting them on May 14, 2022, "despite [Gannett] having a system in place to document any outreach by customers," and instead that their record of online chats shows Anderson reached out on June 11, 2022, and again on June 23, 2022, to cancel, which was after the monthly rate had been increased to $9.99 per month. (*Id.* ¶ 4.) Yoke also attests that Gannett's internal transaction records show that Anderson made no further payments to Gannett after she reached out on June 11. (*Id.* ¶ 5.)

In opposition, Anderson relies heavily on *Davis v. Wells Fargo*, 824 F.3d 333 (3d Cir. 2016), for the argument that Gannett's Article III standing challenge is actually a merits-based challenge that should not be decided on a motion to dismiss. (ECF No. 21 at 20-25.) Even if appropriate for a decision now, Anderson maintains that, in fact, she contacted Gannett to cancel on or about May 14, 2022, and was subsequently charged a $9.99 fee on May 21, 2022.[4] (*Id.* at 25.) In support, Anderson submits a December 5, 2022 declaration under penalty of perjury wherein she declares that, "[t]o the best of [her] recollection, [she] first contacted Gannett to cancel [her] digital newspaper subscription on or about May 14, 2022." (ECF No. 21-1 ¶ 3.) She also attaches as an exhibit a list of transactions from her "Cash App," which indicates that she was charged $9.99 on May 21, 2022, for "Brdg Courier News." (ECF No. 21-2 at 1.) Anderson argues that Gannett's evidence that she did not contact them in May 2022 is inconclusive and should not be relied on. (ECF No. 21 at 26-28.) If the Court does intend to decide the standing issue now, Anderson asks that the Court permit the parties an opportunity "to conduct limited jurisdictional discovery as to this issue." (*Id.* at 29.)

---

[4] Anderson also represents that Gannett tried to charge her $9.99 on June 21, 2022, but the charge was declined and no money was taken from her because she had "directly contacted Cash App and requested that payments to Courier News be blocked." (ECF No. 21-1 ¶ 7.)

On reply, Gannett contends that Anderson has not met her burden of demonstrating standing because "[t]he evidence before the Court overwhelmingly shows that Plaintiff has not been injured," and she relies "entirely on a self-serving declaration, which does nothing more than parrot the allegations in the complaint." (ECF No. 23 at 8-9.)  In further support of its position, Gannett submits a second declaration from Yoke, dated January 3, 2023, which declares under penalty of perjury that "Gannett ran a search of all chats with customers from May 13, 2022 through May 15, 2022" and "also ran a search of all chats for the month of May regarding Courier News subscriptions" and these searches "establish[] that no customer named Nichole Anderson (nor with the initials N.A.) contacted Gannett." (ECF No. 23-1 ¶¶ 6-7.)

## II.    LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  Motions to dismiss for lack of standing are "also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). "On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Ballentine*, 486 F.3d at 810 (quoting *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).

## III. DISCUSSION

### A. Standing

Before the Court reaches the other bases proffered to dismiss and/or strike Plaintiff's claims under Rule 12, the Court must first determine pursuant to Rule 12(b)(1) if Anderson has standing and, relatedly, if this Court has subject matter jurisdiction. *See In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."); *see also* Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed. Apr. 2023) ("[W]hen the motion is based on more than one ground, the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first . . . .").

Article III standing consists of three elements: has plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

As to the first element, "an injury in fact must be both concrete and particularized." *Id.* at 340 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). To be "concrete," an injury must "actually exist," that is, be "real, and not abstract." *Id.* (quoting Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that "traditional tangible harms, such as physical harms and monetary harms" qualify as concrete, as do certain "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion"). "For an injury to be 'particularized,' it 'must

affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 561 n.1).

There are two types of challenges to standing under Rule 12(b)(1): "either a facial or a factual attack." *Davis*, 824 F.3d at 346. The distinction is significant because it determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the pleadings. *See id.* ("In contrast to a facial challenge, a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" (quoting *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014))); *see also Aichele*, 757 F.3d at 358 (explaining differences between a facial and factual attack under Rule 12(b)(1)).

On factual attack, the plaintiff bears the burden to prove that jurisdiction exists, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Mortensen*, 549 F.2d at 891 ("In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed. Apr. 2023) ("District courts have broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction that raises factual issues."). Nevertheless, the Third Circuit Court of Appeals has cautioned that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly," namely, in circumstances "'where such a claim is wholly insubstantial and frivolous'" and typically not for "merits-related defects." *Davis*, 824 F.3d at 349-50 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

8

Here, the standing dispute is a relatively straightforward factual attack by Gannett as to whether Anderson has an injury-in-fact.

Anderson alleges in her Complaint that "[o]n or about May 14, 2022, [she] first informed [Gannett] via [its] online chat service that she wished to discontinue her Subscription." (ECF No. 1 ¶ 24.) Then, "[a]pproximately one month later, . . . [Gannett] automatically renewed Plaintiff's previously cancelled Subscription and billed Plaintiff's account for $9.99." (*Id.* ¶ 27.) The alleged injury was that, "as a result of [Gannett's] fraudulent conduct, [Anderson] paid nearly $10.00 in unauthorized charges . . . despite duly cancelling her Courier News Subscription on May 14, 2022." (*Id.* ¶ 30.)

In moving to dismiss, Gannett has submitted two declarations from its Executive Escalations Manager, Yoke, who declares that Gannett has searched its records and there is no record of Anderson having contacted them on or around May 14, 2022, to request that her subscription to the Courier News be cancelled. (ECF No. 12-2 ¶ 4; ECF No. 23-1 ¶¶ 6-7.) Instead, the searches run by Gannett and the records submitted to this Court reflect two instances when Anderson contacted Gannett requesting to cancel her subscription: first on June 11, 2022, and the second time on June 23, 2022. (ECF No. 12-2 ¶¶ 4-5; ECF No. 23-1 ¶¶ 4-5.) Because Gannett's records also reflect that Anderson never paid any amount to them after she contacted them on June 11, 2022, Gannett's contention is she has no injury and cannot maintain claims against them on this basis. (ECF No. 12-2 ¶ 6.)

In rebuttal, Anderson submits a declaration wherein she represents, without any substantiating documentation, that, "[t]o the best of [her] recollection," she "first contacted" Gannett to cancel her subscription on May 14. (ECF No. 21-1 ¶ 4.) Anderson does not dispute

that she did not pay Gannett anything more after June 11[5]; instead, she now submits documentation that she was charged $9.99 by Gannett on May 21, 2022.  (*Id.* ¶ 5-6; ECF No. 21-2 at 1.)  She appears to contend that this May 21 payment, which is just seven days after Anderson allegedly first contacted Gannett, is her injury.  (ECF No. 21-1 ¶¶ 4-6.)

Despite this evident factual dispute on an issue fundamental to whether Anderson has any injury at all, Anderson would have the Court not decide based on the evidence presented whether she has standing.  Relying on *Davis v. Wells Fargo*, she submits that what is raised is a merits-related issue and the Court should simply presume jurisdiction based on the allegations in the Complaint.  (ECF No. 21 at 20-25.)  *Davis*, however, does not provide persuasive support for the Court declining to consider the factual-dispute presented for purposes of determining standing under the present circumstances.

In *Davis*, the district court had dismissed breach-of-contract claims against Assurant pursuant to Rule 12(b)(1), reasoning that plaintiff "lacked standing to bring those claims because he sued the wrong corporate entity."  824 F.3d at 338.  In vacating and remanding, the United States Court of Appeals for the Third Circuit explained that "[a]n analysis of standing generally focuses on whether the *plaintiff is the right party* to bring particular claims, not on whether the plaintiff *has sued the right party*.  The latter question goes not to standing and jurisdiction but to the merits of the claims themselves." *Id.* (emphasis in original).  The Court further explained that because the issue of whether Assurant or its wholly-owned subsidiary was the proper defendant was "a matter open to reasonable dispute" and "the extent of their intertwined operations" needed

---

[5]     Although Anderson has submitted documentation that shows that Gannett tried to charge her on June 21, 2022, this charge was declined and no money was taken from her.  (ECF No. 21-1 ¶ 7; ECF No. 21-3 at 1.)

to be "tested by the adversary process," it was particularly ill-suited for a determination under Rule 12(b)(1). *Id.* at 347-48.

Here, by contrast with *Davis*, Gannett is not arguing that it is not the right defendant[6] (which would go to the merits of the claims themselves); rather, its standing argument is based on the contention that Anderson is not the right plaintiff because she has no injury, to wit, she never had money taken from her after she tried to cancel her subscription with Gannett. This elementary issue appears to be precisely the kind of plaintiff-specific standing challenge that the Third Circuit has suggested is appropriate to be considered at this stage in the proceedings pursuant to Rule 12(b)(1), and which the Supreme Court has suggested may be ripe for dismissal on jurisdictional grounds as "wholly insubstantial." *See id.* at 348, 350 n.19 ("[S]tanding is generally an inquiry about the plaintiff: is this the right person to bring this claim."); *see also Charlton v. Comm'r*, 611 F. App'x 91, 94-95 (3d Cir. 2015) ("Because there was no collection action against Charlton, she had no injury, and thus no standing to sue. The District Court thus correctly dismissed Charlton's claims [pursuant to Rule 12(b)(1)]."); *Heartland Payment Sys., LLC v. Carr*, Civ. No. 18-09764, 2021 WL 302918, at *4 (D.N.J. Jan. 29, 2021) ("The court may 'treat the Rule 12(b)(1) motion as a factual attack' on standing if the basis of the attack is that the non-movant has no injury-in-fact. Accordingly, Heartland may pursue a factual attack only on the injury-in-fact element." (citation omitted)).

The other cases cited by Anderson are ultimately unpersuasive because they either involved factual disputes as to the merits of a case (not, as here, a straightforward factual question as to whether there was an injury at all) or the courts found sufficient the evidence confirming plaintiffs' injury and standing. *See Manuel v. NRA Grp. LLC*, 722 F. App'x 141, 146 (3d Cir. 2018)

---

[6] For example, Gannett is not arguing for purposes of standing that the Courier News should be the defendant instead.

("Because [plaintiff] alleged that he received calls and provided evidence of the same, he has established his standing to bring a TCPA claim in federal court . . . ."); *Lewis v. Gov't Emps. Ins. Co.*, Civ. No. 18-5111, 2022 WL 819611, at *6 (D.N.J. Mar. 18, 2022) ("GEICO sets forth additional facts that Plaintiffs' claim was submitted to binding appraisal, thereby nullifying any injury. Plaintiffs argue in response that the appraisal offer, which they did not accept, did not resolve their claims or change the fact that GEICO undervalued their claim. This is a factual dispute about the merits, not a standing challenge."); *Abramson v. Oasis Power LLC*, Civ. No. 18-00479, 2018 WL 4101857, at *4 (W.D. Pa. July 31, 2018), *report and recommendation adopted*, Civ. No. 18-479, 2018 WL 4095538 (W.D. Pa. Aug. 28, 2018) (holding that plaintiff "pleaded an injury (nuisance and invasion of privacy from a prerecorded telephone call) that the TCPA directly aimed to prevent," and it did not matter that plaintiff had a "prolific history of filing TCPA lawsuits").

Indeed, if Anderson did not pay anything to Gannett after she first contacted the company to cancel, then she would not only have no concrete injury but she also would not be included in the definition of the proposed class and subclass she seeks to represent as a named plaintiff. According to Anderson's own Complaint, excluded from both proposed classes would be persons "who received refunds after being charged any additional amounts after they cancelled their subscription." (ECF No. 1 ¶ 37.) If Anderson paid nothing after canceling, then like those who have been refunded, she would have nothing to recover.

Such a defect (*i.e.*, if Anderson never paid anything after asking Gannett to cancel her subscription) would make this case (where Anderson alone is attempting to represent classes of "thousands of individuals" who were allegedly charged for subscriptions *after* they had tried to cancel) wholly insubstantial. It is well-settled that a named plaintiff cannot represent classes for claims the named plaintiff could not herself or himself maintain. *See Winer Fam. Tr. v. Queen*,

503 F.3d 319, 326 (3d Cir. 2007) ("The initial inquiry in [a class action] is whether the lead plaintiff individually has standing, not whether or not other class members have standing."); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("It is well settled that to be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim.").

Reviewing the declarations and documents submitted by the parties, the Court has serious reservations as to whether Anderson has met her burden of demonstrating an injury-in-fact in this case. Anderson has presented no documentation substantiating her equivocal recollection that she contacted Gannett via the online chat service to cancel her subscription on or about May 14, 2022, and Gannett's searches of their records apparently returned no evidence of Anderson contacting them on or about May 14. Instead, Gannett's first record of Anderson contacting them to cancel is supposedly on June 11, 2022, and both parties appear to agree that Anderson did not make any further payments to Gannett after June 11. Although Anderson now seems to contend that the $9.99 she was charged on May 21, 2022, was unauthorized and constitutes her injury, this contrasts with what was in the Complaint, wherein Anderson alleged that the unauthorized charge occurred "[a]pproximately one month" after May 14, not seven days later. (ECF No. 1 ¶¶ 24-30.)

In any event, before the Court definitively decides the issue of standing in this case pursuant to Rule 12(b)(1), it believes it appropriate to grant Plaintiff's request that the parties be provided a brief opportunity to conduct limited discovery on the issue of whether Anderson has an injury-in-fact. In order to create the necessary evidentiary record, the Court is authorized to order such targeted jurisdictional discovery. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015) ("District courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists.").

Because resolving the standing issue against Plaintiff would terminate this action in its entirety, because there is a relatively straightforward factual dispute as to whether she has an injury, and because Gannett has submitted documented evidence (including on reply to which Plaintiff was not able to respond) related to searches in its databases conducted without Plaintiff being able to demand clarification or seek any further documentation, the Court believes this limited discovery on the issue of subject matter jurisdiction is warranted — specifically, evidence regarding the timing of Anderson's cancelation request(s) and any charge(s) from Gannett and payment(s) obtained from Anderson subsequent to the cancelation request(s). The other bases Gannett proffered to dismiss the Complaint and class action allegations (pursuant to Rule 12(b)(6) and Rule 12(f)) will be stayed without prejudice as to their renewal, if necessary, after the issue of standing is first resolved by the Court.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss and to Strike the Class Action Complaint (*see* ECF No. 12) is **STAYED**. The parties shall have sixty (60) days in which to conduct limited discovery and then submit additional briefing as to Defendant's factual attack as to whether Plaintiff has an injury-in-fact necessary for Article III standing. An appropriate Order follows.

Dated: May 23, 2023

*Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**