**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICHOLE ANDERSON, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>GANNETT CO., INC.,<br><br>  Defendant. | Civil Action No. 22-05088 (GC) (RLS)<br><br>**MEMORANDUM ORDER** |

**CASTNER, United States District Judge**

**THIS MATTER** comes before the Court following discovery and supplemental briefing as to whether Plaintiff Nichole Anderson has standing to maintain her causes of action against Defendant Gannett Co., Inc. (ECF Nos. 28 & 33.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice. Plaintiff has thirty days to file an amended or supplemental complaint that conforms to the evidence produced during jurisdictional discovery.

**I.    BACKGROUND**

The dispute centers on Plaintiff Nichole Anderson's allegation that she was charged $9.99 by Defendant Gannett *after* Plaintiff tried to cancel her "digital only" subscription to the Courier News. (ECF No. 1 ¶¶ 4, 6 ("Despite duly canceling her subscription before it was set to automatically renew, Defendant continued to charge Plaintiff a $9.99 subscription fee after she

had cancelled her subscription. . . . As a result of Defendant's fraudulent conduct, Plaintiff paid nearly $10.00 in additional, unauthorized charges for a monthly subscription that she had already cancelled.").) Based on this core allegation, Plaintiff sues individually and on behalf of a putative class of "thousands of individuals" who allegedly "cancelled their Gannett-owned newspaper subscription but were subsequently charged," and a subclass consisting of "[a]ll consumers who . . . cancelled their Courier News subscription but were subsequently charged." (*Id.* ¶¶ 36, 40.) Plaintiff asserts claims under New Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.* (Count I); the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.* (Count II); breach of contract, including breach of the covenant of good faith and fair dealing (Count III); and unjust enrichment (Count IV). (*Id.* ¶¶ 45-80.)

When Defendant previously moved to dismiss, it argued that there is a fatal flaw with all of Plaintiff's claims: Plaintiff did not suffer an injury-in-fact for Article III standing because she did not actually pay anything to Defendant after she asked to cancel her subscription. In support, Defendant submitted two declarations from Blair Yoke, Gannett's Executive Escalations Manager, who is "responsible for overseeing the customer service escalations process." (ECF No. 12-2 ¶ 2.) In the first declaration, dated October 17, 2022, Yoke declared under penalty of perjury that Gannett's records show that Plaintiff tried to cancel her subscription on June 11, 2022, and again on June 23, 2022, and that she "made no further credit card payments to Gannett" after either of those dates. (*Id.* ¶¶ 4-5.) In the second declaration, dated January 3, 2023, Yoke declared under penalty of perjury that "Gannett ran a search of all chats with customers from May 13, 2022 through May 15, 2022"—the dates Plaintiff alleged she first contacted Gannett to cancel her subscription—and "also ran a search of all chats for the month of May regarding Courier News subscriptions," and these searches "establish[] that no customer named Nichole Anderson (nor with the initials N.A.) contacted Gannett." (ECF No. 23-1 ¶¶ 6-7.)

In opposition, Plaintiff maintained that she had contacted Gannett to cancel her subscription on or about May 14, 2022, and was subsequently charged a $9.99 fee on May 21, 2022. Under penalty of perjury, Anderson declared that, "[t]o the best of [her] recollection, [she] first contacted Gannett to cancel [her] digital newspaper subscription on or about May 14, 2022." (ECF No. 21-1 ¶ 4.) She also attached as an exhibit a list of transactions from her "Cash App," which indicated that she was charged $9.99 on May 21, 2022, for "Brdg Courier News." (ECF No. 21-2 at 1.) Plaintiff argued that Defendant's evidence that she did not contact them in May 2022 is inconclusive and unreliable. (ECF No. 21 at 26-28.)

In its May 23, 2023 Memorandum Opinion,[1] the Court noted discrepancies between Plaintiff's narrative and what was alleged in the Complaint. (ECF No. 24 at 13.) In view of the discrepancies as well as the evidence that suggested that Plaintiff may not have contacted Gannett to cancel her subscription until June 2022 (in which event Plaintiff did not pay anything to Defendant after allegedly trying to cancel), the Court expressed "reservations as to whether Anderson ha[d] met her burden of demonstrating an injury-in-fact." (*Id.*) Indeed, as the Court explained:

> [I]f Anderson did not pay anything to Gannett after she first contacted the company to cancel, then she would not only have no concrete injury but she also would not be included in the definition of the proposed class and subclass she seeks to represent as a named plaintiff. . . .
>
> Such a defect (*i.e.*, if Anderson never paid anything after asking Gannett to cancel her subscription) would make this case (where Anderson alone is attempting to represent classes of "thousands of individuals" who were allegedly charged for subscriptions *after* they had tried to cancel) wholly insubstantial. It is well-settled that a named plaintiff cannot represent classes for claims the named plaintiff could not herself or himself maintain.

---

[1] The Memorandum Opinion discusses the factual allegations in this case and the issues posed by Defendant's challenge to Plaintiff's standing. That discussion can be found at ECF No. 24 or at *Anderson v. Gannett Co.*, Civ. No. 22-05088, 2023 WL 3604656 (D.N.J. May 23, 2023).

[(*Id.* at 12-13 (collecting cases).)]

The Court granted the parties an opportunity to engage in limited jurisdictional discovery to determine whether Plaintiff was in fact injured. (ECF No. 25.) Once the jurisdictional discovery period ended, Defendant submitted a supplemental brief with exhibits. (ECF No. 28.) Defendant contends that "all of the evidence . . . substantiates that Plaintiff did not contact Gannett to cancel her subscription until June 11, 2022," and that "[d]espite the opportunity for discovery, Plaintiff has not elicited any evidence to support an alleged chat, which she asserts 'to the best of her recollection' occurred 'on or about May 14, 2022.'" (*Id.* at 5-6.) Because "Plaintiff did not contact Gannett in May, and because she even admits that she did not pay the charge for the period from June 18, 2022 to July 18, 2022," Defendant asks the Court to conclude that Plaintiff "lacks Article III standing." (*Id.*)

After obtaining an extension from the Court, Plaintiff also submitted a supplemental brief with exhibits on standing. (ECF No. 33.) Plaintiff abandons several of the allegations in her Complaint. Plaintiff now acknowledges that she did not pay anything to Defendant after trying to cancel her subscription to the Courier News. (*Id.* at 3-5.) Nevertheless, she maintains that she has standing because Defendant unsuccessfully tried to charge her on two occasions after she first attempted to cancel her subscription on June 11, 2022. (*Id.* at 5 n.2 ("Plaintiff's injury was Defendant's charge on June 18 and June 22 . . . , following her cancellation on June 11.").) While neither attempted charge was processed and Plaintiff paid no money to Defendant, Plaintiff claims that "[b]etween June and August of 2022, Defendant's records improperly showed that Plaintiff owed a debt to Defendant" of $9.99, and that the "debt" was erased from Defendant's records two days after she filed the present suit. (*Id.* at 5.) Plaintiff says that the existence of the "debt" confers

4

standing and that its erasure was an improper and "unilateral[]" attempt by Defendant to moot her claims. (*Id.*)

## II. LEGAL STANDARD

Motions to dismiss for lack of standing are "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). Rule 12(b)(1) permits two types of standing challenges: "either a facial or a factual attack." *Davis*, 824 F.3d at 346. The distinction determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the pleadings. *Id.*

Where, as here, a defendant brings a factual attack, the plaintiff bears the burden to prove that jurisdiction exists, and "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Mortensen*, 549 F.2d at 891 ("In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed. Apr. 2023) ("District courts have broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction that raises factual issues.").

Article III standing consists of three inquiries: has plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as*

*revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As to the first element, "an injury in fact must be both concrete and particularized." *Id.* at 340 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). To be "concrete," an injury must "actually exist," that is, be "real, and not abstract." *Id.* (citations omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that "traditional tangible harms, such as physical harms and monetary harms" qualify as concrete, as do certain "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion"). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 561 n.1).

### III. DISCUSSION

The evidence produced during jurisdictional discovery is inconsistent with the Complaint's factual allegations that Plaintiff suffered an injury when she "paid" $9.99 to Defendant despite trying to cancel her subscription.[2] (*See, e.g.*, ECF No. 1 ¶¶ 4, 6, 30.) Plaintiff now acknowledges that she did not pay anything to Defendant after first trying to cancel her subscription on June 11, 2022. Accordingly, Plaintiff does not have standing to sue based on the $9.99 allegedly paid to Defendant.

In the Complaint, Plaintiff alleged that "[o]n or about May 14, 2022, [she] first informed Defendant via Defendant's online chat service that she wished to discontinue her Subscription." (ECF No. 1 ¶ 24.) "Approximately one month later," she continued, "Defendant automatically renewed Plaintiff's previously cancelled Subscription and billed Plaintiff's account for $9.99." (*Id.* ¶ 27.) "Thus, as a result of Defendant's fraudulent conduct, Plaintiff paid nearly $10.00 in

---

[2] In her earlier opposition to Defendant's motion to dismiss, Plaintiff had also argued that "[b]ecause Plaintiff paid a subscription fee after cancelling, she has standing to pursue her claims." (ECF No. 21 at 26.)

unauthorized charges from Defendant, despite duly cancelling her Courier News Subscription on May 14, 2022." (*Id.* ¶ 30; *see also id.* ¶ 6 ("As a result of Defendant's fraudulent conduct, Plaintiff paid nearly $10.00 in additional, unauthorized charges for a monthly subscription that she had already cancelled.").)

Following jurisdictional discovery, Plaintiff acknowledges that she did not try to cancel her subscription on May 14, 2022, and she acknowledges that she did not actually pay Defendant anything after trying to cancel her subscription. (ECF No. 33 at 5 n.2.) Instead, Plaintiff writes that she tried to cancel her subscription to the Courier News on June 11, 2022, and Defendant confirmed that the membership would be stopped. (*Id.* at 3-4.) Despite this confirmation, Defendant then allegedly tried to charge Plaintiff the $9.99 subscription fee on June 18, 2022, and again on June 22, 2022. (*Id.* at 4.) Neither attempted charge was processed, however. The June 18 charge was rejected because "Plaintiff had an insufficient balance to pay the charge." (*Id.*) The June 22 charge was rejected because Plaintiff "block[ed] Gannett from further charges." (*Id.*) Plaintiff then contacted Defendant on June 23, 2022, to repeat her cancellation request, which was confirmed. (*Id.*) There is no allegation that Defendant charged Plaintiff after June 23.[3] Because the evidence all supports the conclusion that Plaintiff did not pay anything to Defendant after trying to cancel her Courier News subscription on June 11, 2022, the Court finds that she does not have standing to pursue a claim based on this alleged injury.

Plaintiff asserts in her supplemental brief, for the first time, a new injury that she claims confers Article III standing. Plaintiff contends that from June 2022 until August 19, 2022, "Defendant's records improperly showed that" Plaintiff had "an outstanding balance of $9.99."

---

[3] During jurisdictional discovery, Plaintiff resubscribed in July 2023 to the Courier News and then cancelled her subscription without issue. (ECF No. 28 at 7; ECF No. 28-2 at 1; ECF No. 33 at 5.)

(*Id.* at 5.)  Plaintiff insists that this "outstanding balance" listed on Defendant's internal billing system is a "debt" sufficient to confer standing under Article III.  (*Id.* at 5-8 (collecting cases).)

Plaintiff argues that Defendant's unilateral action to clear the "outstanding balance" from its records on August 19, 2022, was an improper "pick-off" attempt.  (ECF No. 33 at 9-13.)  Phrased differently, Plaintiff argues that Defendant eliminated her individual claim with the goal of preventing class certification.  (*Id.* at 10-12 (collecting cases).)  Plaintiff also argues that one of the exceptions to mootness applies, namely, that the "case presents issues capable of repetition yet evading review."  (*Id.* at 13-16.)  Plaintiff argues that she "may wish to re-subscribe to one of Defendant's many newspapers in the future" and "Defendant is free to simply reinstate the prior practice and improperly bill Plaintiff again at a future point in time."  (*Id.* at 15.)  Finally, Plaintiff argues that she has not been "afforded complete relief," and she should be permitted to seek injunctive relief.  (*Id.* at 16-17.)

Because Plaintiff raises a new alleged injury (*i.e.*, the $9.99 "outstanding balance" listed on Defendant's internal records from June to August 2022) and her anticipated defenses to mootness (*e.g.*, unlawful pick-off attempt and capable of repetition yet evading review) for the first time in her supplemental brief and because Defendant has not had an opportunity to address Plaintiff's new allegations or arguments for Article III standing, the Court finds that the appropriate course is to dismiss Plaintiff's original Complaint without prejudice.  The Complaint's allegations differ from what has been revealed in jurisdictional discovery.  Plaintiff will be given thirty days to file an amended or supplemental complaint.  Defendant may then answer or otherwise respond in accordance with the Federal Rules of Civil Procedure.

### IV. CONCLUSION & ORDER

For the reasons set forth above, and other good cause shown,

**IT IS** on this 10th day of July, 2024, **ORDERED** as follows:

1. Plaintiff's Complaint (ECF No. 1) is **DISMISSED** without prejudice.

2. Plaintiff has thirty days to file either an amended or supplemental complaint.

3. The Clerk is directed to **ADMINISTRATIVELY TERMINATE** this case without prejudice to it being reopened if Plaintiff files an amended or supplemental complaint within thirty days.

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

9