<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NICOLE ANDERSON**, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**GANNETT CO., INC.**,<br><br>Defendant. | Civil Action No. 22-5088 (ZNQ) (RLS)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss and to Strike the class allegations in the Amended Complaint filed by Defendant Gannett Co., Inc. ("Gannett" or "Defendant") ("the Motion," ECF No. 39.) Defendant filed a brief in support of the Motion. ("Moving Br.," ECF No. 39-1.) Plaintiff Nicole Anderson ("Anderson" or "Plaintiff") filed a brief in opposition. ("Opp'n Br.," ECF No. 44.) Defendant submitted a reply ("Reply Br," ECF No. 45), and a copy of the transcript from the deposition of Blair Yoke, an employee for Gannett, that was conducted during jurisdictional discovery. ("Yoke Dep.," ECF No. 45-1.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendant's Motion. It

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

will **GRANT** Defendant's Motion to Dismiss and **DENY AS MOOT** Defendant's Motion to Strike.

I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

    A.    **Procedural History**

Plaintiff filed her initial class action Complaint on August 17, 2022. (ECF No. 1.) On October 18, 2022, in lieu of filing an Answer, Defendant filed a motion to dismiss. (ECF No. 12.) That motion was set by the Clerk's Office before the Honorable Georgette Castner, U.S.D.J. On May 23, 2023, Judge Castner issued a memorandum opinion whereby the Court stayed the motion to dismiss pending limited discovery and additional briefing as to whether Plaintiff had Article III standing. (ECF No. 24.) In the decision, the Court explained that it had "serious reservations as to whether Anderson has met her burden of demonstrating an injury-in-fact." (*Id.*) As a result, the Court noted that before it "definitively decides the issue of standing . . . it believes it appropriate to grant Plaintiff's request that the parties be provided a brief opportunity to conduct limited discovery." (*Id.*) Thus, the Court stayed the motion to dismiss and the parties were given sixty days to conduct jurisdictional discovery. (ECF No. 25.)

After the parties completed jurisdictional discovery and filed supplemental briefing, Judge Castner issued another opinion addressing the motion to dismiss. (ECF No. 37.) The Court found that the "evidence produced during jurisdictional discovery [showing that Plaintiff never paid anything] is inconsistent with the Complaint's factual allegations that Plaintiff suffered an injury when she paid $9.99 to Defendant." (*Id.*) Accordingly, the Court held that Plaintiff lacked standing for failure to show the requisite harm. (*Id.*) The Court also noted that Plaintiff argued a new injury in her supplemental brief to the motion to dismiss: that Defendant's internal billing system improperly showed that Plaintiff had an outstanding balance. (*Id.*) Because Defendant

was not given an opportunity to address Plaintiff's newly-asserted injury, the Court found that the "appropriate course" was to dismiss Plaintiff's original complaint without prejudice. (*Id.*)

Within thirty days of the Court's decision, on August 6, 2024, Plaintiff filed an Amended class action Complaint.[2] ("Am. Compl.," ECF No. 38.) Thereafter, Defendant filed the instant Motion and this matter was reassigned to the undersigned. (ECF Nos. 39, 41.)

### B. Factual Background

Defendant is a media company whose portfolio includes USA Today, Courier News, and many other local media outlets. (Am. Compl. ¶¶ 13, 14.) Defendant offers various paper and digital newspaper subscription services to consumers. (*Id.* ¶ 15.) When a consumer visits Defendant's website to subscribe to one of Defendant's news offerings, Defendant directs consumers to a webpage that states:

> I acknowledge by clicking "Subscribe", I have read the subscription terms and conditions below and I am agreeing to a subscription that will automatically renew. My credit card will be charged until I cancel the subscription, which I may do at any time by calling Customer Service, visiting the Chat Center. . . .

(*Id.* ¶ 18.) Underneath the "subscribe" button is language stating that "Your subscription will continue and we will charge you at the then regular rate, less any applicable credits, unless you cancel, which you can do at any time. . . ." (*Id.* ¶ 19.) Moreover, Defendant's subscription terms and conditions provide that a consumer may cancel their subscription at any time and if done before renewal, the consumer will not be charged for the next period's subscription fee. (*Id.* ¶ 20.)

On or about November 18, 2021, Plaintiff purchased a Courier News digital subscription from Defendant for $1.00 for the first six months of membership, and then for $9.99 per month

---

[2] The class is defined in the Amended Complaint as "[a]ll consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, cancelled their Gannett-owned newspaper subscription but were subsequently charged by Defendant." (Am. Compl. ¶ 47.) Excluded from the class are all persons who received refunds from Defendant after being charged. (*Id.* ¶ 48.)

upon renewal. (*Id.* ¶¶ 2, 22, 23.) As noted, according to the Amended Complaint, at all relevant times, Defendant represented through contractual terms that Plaintiff may cancel her automatic renewal subscription at any point prior to the automatic renewal of the subscription. (*Id.* ¶ 3.) Plaintiff canceled her subscription on June 11, 2022—within the six-month period—and was assured that her membership would be permanently stopped. (*Id.* ¶¶ 23, 26.) However, despite cancelling her subscription before it was set to automatically renew, Plaintiff alleges that Defendant twice attempted to collect its $9.99 renewal fee but failed each time. (*Id.* ¶¶ 4, 27.) It failed the first time because Plaintiff's account had insufficient funds, and the second time because by that point Plaintiff had blocked the charge. (*Id*. ¶ 27.)

On June 23, 2022, Plaintiff contacted Defendant for a second time to cancel her previously canceled subscription. (*Id.* ¶ 30.) Although the subscription was canceled, Defendant's records nevertheless showed that Plaintiff had an outstanding balance of $9.99. (*Id.* ¶ 32.) Consequently, Plaintiff alleges that Defendant's fraudulent and unconscionable autorenewal billing practices against her and other consumers caused her harm, in light of the outstanding balance. (*Id.* ¶¶ 1, 36.) More specifically, Plaintiff alleges that Defendant breached its contract with consumers in violation of the New Jersey Consumer Fraud Act ("NJCFA") and the Electronic Funds Transfer Act ("EFTA"). (*Id.* ¶¶ 5, 6.) As a result of Defendant's fraudulent conduct, the Amended Complaint alleges that "Plaintiff suffered an injury-in-fact in the form of an outstanding balance of $9.99 in unauthorized charges for a monthly subscription that" had already been canceled. (*Id.* ¶¶ 6, 36.) To be clear, however, Plaintiff has never paid the $9.99 charge. (*See generally id. ¶¶* 4, 27; Moving Br. at 1; Opp'n Br. at 8–9.)

The Amended Complaint moreover alleges that after the initial Complaint was filed on August 17, 2022, Defendant attempted "to unilaterally moot Plaintiff's claims by removing the

4

improper $9.99 debt from Plaintiff's account."[3]  (*Id.* ¶ 34.)  Plaintiff then initiated a new six-month subscription for $1.00 in July 2023, and then immediately canceled the automatic renewal.  (*Id.* ¶ 35.)

Based on these allegations, the Amended Complaint asserts four counts on behalf of Plaintiff herself and a proposed class under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Count One alleges a violation of the NJCFA.  (*Id.* ¶¶ 56–63.)  Count Two alleges a violation of the EFTA.  (*Id.* ¶¶ 64–72.)  Count Three alleges state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  (*Id.* ¶¶ 73–84.)  Finally, Count Four alleges unjust enrichment.  (*Id.* ¶¶ 85–91.)

## II.  ARTICLE III STANDING

Although CAFA can convey subject matter jurisdiction, "[a]bsent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."  *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).  The Court will therefore consider Plaintiff's Article III standing.  *See In re Samsung Data Security Breach Litig.*, Civ. No. 23-3055, 2025 WL 26688, at *3 (D.N.J. Jan. 3, 2025) (noting that "[w]hen a plaintiff fails to establish Article III standing, the court lacks subject matter jurisdiction").

Motions to dismiss for lack of standing are "properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d

---

[3] The Amended Complaint alleges that "Defendant's attempt to unilaterally moot plaintiff's claim does not strip Plaintiff of Article III standing."  (Am. Compl. between ¶¶ 36–37.)  The parties devote portions of their briefs to addressing whether Defendant improperly attempted to "pick-off" the named Plaintiff, thereby mooting her case and destroying the class.  (*See* Opp'n Br. at 12–15; Reply Br. at 4–7.)  A "pick-off" occurs when a "plaintiff's individual claim for relief is 'acutely susceptible to mootness' by the actions of a defendant," and the defendant takes actions to moot the plaintiff's claims.  *Richardson v. Bledsoe*, 829 F.3d 273, 279 (3d Cir. 2016) (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347–48 (3d Cir. 2004)).  The Third Circuit has explained that under these circumstances, the "plaintiff may continue to represent the class he [or she] is seeking to certify even if [their] individual claim has been mooted by [the] actions of the defendant."  *Id.*  For reasons to be shown, the Court finds that Plaintiff has not demonstrated that she ever had standing to bring her claims.  As a practical matter, there cannot be an improper "pick off" of a plaintiff that never had standing to begin with.

Cir. 2007) (citations omitted). When a party challenges standing, as is the case here, the Court's analysis depends on whether the challenge is based on a "facial attack" or a "factual attack." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). "[A] facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 358 (3d Cir. 2014) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). The distinction determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the complaint. *Davis v. Wells* Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (noting that in a facial attack, the court accepts as true the facts as pled in the complaint; whereas, in a factual attack, courts are permitted to consider evidence outside the pleadings). The Motion poses a post-discovery factual attack by challenging whether Plaintiff has suffered an injury-in-fact as a result of having an "outstanding debt" in Defendant's internal billing system. (*See* Reply Br. at 2.)

Article III of the United States Constitution confines the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. Art. III. For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake' in the case." *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). To have standing, a plaintiff must show (1) that he or she suffered an injury-in-fact that is concrete, non-hypothetical, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In order "[t]o establish [an] injury-in-fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). "For an injury to be particularized,

it must affect the plaintiff in a personal and individual way." *Id.* The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements as to each claim. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990).[4]

In its Motion, Defendant renews its position that Plaintiff fails to demonstrate she suffered a concrete injury-in-fact because she did not pay the disputed $9.99 subscription fee, and the "notation of an outstanding balance" in Defendant's internal records is not an injury. (Moving Br. at 1, 6.) Defendant relies on cases from the Third Circuit for the proposition that Plaintiff has not alleged an injury because she has not made a payment or suffered an out-of-pocket loss. (*Id.* at 7.) Defendant further contends that Plaintiff does not have standing because Defendant waived the disputed charge. (*Id.* at 8 (citing *Hoffman v. Nissan-Infinity LT*, Civ. No. 19-1046, 2020 WL 2847756 (D.N.J. June 1, 2020) and *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 391–92 (D.N.J. 2015))).[5] Lastly, Defendant argues that because Plaintiff never had a "live claim" at any point of the litigation, her claim is not "capable of repetition yet evading review." (*Id.* at 9.)

Plaintiff argues that she has standing to bring her claims because it is immaterial that she never paid the fee or outstanding amount. (Opp'n Br. at 8.) What is important, according to Plaintiff, is that she is alleging an improper debt. (*Id.*) Plaintiff argues that *McCracken v. Verisma System, Inc.*, 131 F. Supp. 3d 38 (W.D.N.Y. 2015), is instructive because there the Western District of New York held that the liability to repay the defendant gave the plaintiff standing. (*Id.* at 9.) Plaintiff claims that the cases relied upon by Defendant are distinguishable because the amounts

---

[4] "In the context of a class action, Article III must be satisfied by at least one named plaintiff." *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 359 (3d Cir. 2015); *see also O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

[5] In *Hoffman* and *Mattson*, the Court did not hold that because the defendant waived the charge, the plaintiff lacked Article III standing. Instead, the Court in both cases held that the waiver of the charge showed that the plaintiff did not suffer an ascertainable loss under the NJCFA. *Hoffman*, 2020 WL 2847756, at *7; *Mattson*, 124 F. Supp. 3d at 392.

7

in dispute in those relied-upon cases were never charged to the plaintiffs. (*Id.* at 10 n. 1.) Plaintiff also argues that Defendant's attempts to moot her claims do not strip her of standing because such actions are considered an improper "pick-off" in the context of a putative class action. (*Id.* at 12–15.) Plaintiff further contends that dismissal is improper because the merits issue is capable of repetition while evading review. (*Id.* at 16.) Lastly, Plaintiff contends that the write-off of her outstanding debt did not provide her complete relief because it did not make her whole under the NJCFA. (*Id.* at 18.)

For the reason set forth below, the Court finds that Plaintiff fails to allege a concrete injury-in-fact, and thus, lacks Article III standing. As an initial matter, Plaintiff cannot argue that she has standing based on an alleged injury that she was actually charged $9.99 despite cancelling her subscription to Courier News. That argument has already been rejected by the Court. (July 2024 Mem. Order, ECF No. 37); *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (noting that "the doctrine of law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case"); *Est. of DeRosa v. Murphy*, Civ. No. 22-02301, 2025 WL 249169, at *4 (D.N.J. Jan. 21, 2025) (explaining that a prior judge's ruling on an issue earlier in the case precluded the losing party from reasserting the claim at a subsequent stage in the case).

As a second matter, Plaintiff's allegation that she suffered an injury "in the form of an outstanding balance of $9.99 in unauthorized charges for a monthly subscription that she had already canceled," (Am. Compl. ¶¶ 6, 36), does not confer standing because this alleged injury does not meet the injury-in-fact standard. Notably, it is neither a monetary harm nor an intangible harm. *See TransUnion*, 594 U.S. at 417.

This injury is not a monetary harm because Plaintiff admits that she never paid the $9.99 charge. (Am. Compl. ¶ 4). *See also TransUnion*, 594 U.S. at 425 ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact."). Insofar as Plaintiff has spent no money as a result of the unauthorized charges, she has suffered no out-of-pocket loss. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016).

Although Plaintiff did pay $1.00 for the subscription, Plaintiff does not allege that she did not receive her bargained-for trial period or that she would not have subscribed to Courier News had she known of the issues with Defendant's autorenewal system. In similar autorenewal cases where district courts have found standing, the plaintiffs alleged that they would not have made the initial payment or renewed the plan if they had been aware of the automatic renewal terms. *See, e.g., Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 181 (S.D.N.Y. 2021); *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 991 (N.D. Cal. 2023). No such allegation is made here, nor can it be, given that Plaintiff is aware of Defendant's automatic renewal and that the Amended Complaint provides that Plaintiff might subscribe to Courier News again in the future. (Am. Compl. ¶ 41.)

Separate and apart from monetary harms, there are also intangible harms that are recognized that satisfy the injury-in-fact requirement of Article III, like reputational harm, disclosure of private information, and intrusion upon seclusion. *TransUnion*, 594 U.S. at 417 (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987) (reputational harms); *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008) (disclosure of private information); *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (intrusion upon seclusion)).

No such intangible harms are present here. Contrary to Plaintiff's position, simply because Defendant's internal records revealed an outstanding balance of $9.99 does not mean Plaintiff suffered an injury that imparts Article III standing. Unlike in *TransUnion*, Plaintiff has not alleged,

9

nor can she, that Defendant disseminated the information pertaining to her outstanding balance to a third party, which would result in a concrete injury. *See TransUnion*, 594 U.S. a 432–33. In this regard, the Yoke Deposition provides unrebutted evidence that Defendant would not send a consumer's outstanding debt to a credit or collection agency. (Yoke Dep. 26:23–27:11.)

The Court therefore concludes that Plaintiff has not met her burden to show an injury-in-fact for Article III standing.

The Court's conclusion is consistent with the authorities cited by Plaintiff. In her opposition, Plaintiff cites decisions where this Court has found that ascertainable loss was properly pled in a NJCFA claim. (*See* Opp'n Br. at 8–9). The issue in this case, however, is not whether a plaintiff pleads ascertainable loss under the NJCFA. Instead, the issue is Plaintiff's standing under Article III, which this Court necessarily considers *before* assessing the adequacy of her pleading for the actual claims. Because the Court concludes that Plaintiff lacks Article III standing, it need not reach whether Plaintiff has pled ascertainable loss.

Moreover, Plaintiff's reliance on two cases outside of this Circuit lacks merit. (*See* Opp'n Br. at 9–10.) In *McCracken v. Verisma System, Inc.*, 131 F. Supp. 3d 38 (W.D.N.Y. 2015), the Western District of New York held that the plaintiffs had standing because they were obligated to reimburse their lawyers' law firm, and that "liability to repay the [law firm] for copying expenses" was sufficient to show an injury-in-fact. *McCracken*, 131 F. Supp. 3d at 42. In *McCracken*, the plaintiffs alleged that they suffered a monetary harm given that they had to reimburse the law firm, which Plaintiff cannot allege here. Consequently, *McCracken* is neither binding nor persuasive.

Additionally, *Hamilton v. SunTrust Mortgage Inc.*, 6 F. Supp. 3d 1300 (S.D. Fla. 2014), was a "force-placed insurance case" and the force-placed insurance premiums were automatically added to the plaintiff's total debt. *Id.* at 1307–08. Here, although Defendant attempted to charge

10

Plaintiff the $9.99 renewal fee, it failed to do so. Plaintiff is therefore in the same position today as someone who never subscribed to Courier News at all, contrary to the plaintiff in *Hamilton*. *Hamilton* therefore is also neither binding nor persuasive.

As a final point, to the extent Plaintiff alleges that she is at risk of a future harm given that the outstanding balance is still in Defendant's system or that she intends to subscribe to one of Defendant's news companies in the future, that would-be injury is speculative and hypothetical. *See Spokeo*, 578 U.S. at 341–42; *TransUnion*, 594 U.S. at 415. Insofar as Plaintiff only seeks monetary relief, she cannot credibly argue that she is faced with an imminent risk of future harm for purposes of injunctive relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (addressing standing when seeking injunctive relief). In short, Plaintiff's alleged injury is neither concrete nor particularized. Accordingly, the Court finds that Plaintiff lacks Article III standing to bring any of her claims and that they must therefore be dismissed without prejudice.

Because the Court finds that Plaintiff not only does not have standing for an outstanding debt, but also that she never had standing because she never paid the $9.99 renewal fee, the Court concludes that Defendant did not commit an improper "pick-off" Plaintiff's claims. Likewise, the Court does not reach whether Plaintiff states a claim under Rule 12(b)(6) for her NJCFA, EFTA, breach of contract, and unjust enrichment claims. Finally, for the foregoing reasons, Defendant's Motion to Strike will be **DENIED AS MOOT**.

### III.  DENYING FURTHER LEAVE TO AMEND

A court need not dismiss without prejudice and give leave to amend if amendment would be "inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002) (citations omitted); *Budet v. Rutgers Business School*, Civ. No. 22-2134, 2024 WL 3371408, at

11

*7–8 (D.N.J. July 11, 2024) (dismissing complaint and denying leave to further amend based on plaintiff's repeated failure to cure standing defect).

Generally, dismissal with leave to re-file would be an appropriate result; but here, Plaintiff was given jurisdictional discovery and an opportunity to cure her standing deficiency. She has failed, in response to a factual challenge, to establish an injury-in-fact. Thus, the Court finds that allowing Plaintiff to file a further amended complaint would only serve to needlessly extend this litigation, and subject Defendant to additional cost in added time, attention, and financial expense. As such, the Court concludes that any further amendment would be futile. Accordingly, the Court will dismiss the Amended Complaint without leave to further amend.

## IV.   CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendant's Motion. The Court will **GRANT** the Motion to Dismiss and **DISMISS WITHOUT PREJUDICE** the Amended Complaint without leave to further amend. Defendant's Motion to Strike will be **DENIED AS MOOT**. An appropriate Order will follow.

Date: March 7, 2025

                                                  s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**